**IN THE UNITED STATES COURT OF APPEALS**

**FOR THE FIFTH CIRCUIT**

_____

No. 97-50945
Summary Calender
_____


SCRUGGS PROPERTIES, INC.,

Plaintiff-Appellant,

VERSUS

STATE FARM LLOYDS,

Defendant-Appellee.


_____

Appeal from the United States District Court
for the Western District of Texas
(SA-96-CV-1246)
_____
August 19, 1998


Before JOLLY, SMITH, and WIENER, Circuit Judges.

JERRY E. SMITH, Circuit Judge:[*]


Scruggs Properties, Inc. ("Scruggs"), appeals an adverse jury verdict on its insurance policy claim.  Finding no reversible error in this Texas diversity case, we affirm.


I.

---

[*] Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

On July 5, 1995, Donald Scruggs went to his office and found that the property had been burglarized the evening before. The thieves had taken about $39,000 worth of inventory and caused the company about $46,000 in lost income. Scruggs called the police and his insurance company.

When the police arrived, Detective Randy Oakes suspected an inside job: The placement of the shattered window glass, which the thieves apparently used to enter, suggested a ploy. Oakes suspected that whoever was behind the theft probably entered through the door, with a key, and later smashed the window to make it look like a forcible entry.

Oakes's beliefs were reinforced by the fact that the thieves appeared in no hurry to take the goods. They had neatly stacked equipment near the doorway, wrapping cords and all, apparently in anticipation of a second trip. Oakes also noticed, from a few empty cans, that the thieves had taken time to have a beer or two before completing the theft.

Oakes interviewed Scruggs's employees and found that several believed the burglary was the work of Douglas Rockwell, who purportedly had gone into business with Scruggs. Scruggs provided the name and perhaps some clients, and Rockwell was to have provided the cash and the facilities.

Oakes's background research on Rockwell turned up a likely suspect. Rockwell apparently was living under an assumed name, on the run from a fraud charge, and had fabricated his existence in

2

several other areas of the country in an attempt to cheat a buck. Oakes and Scruggs also learned that Rockwell had swindled Scruggs in their business deal. Rockwell had in fact provided none of his own capital, but instead provided money by forging Scruggs's name on loan documents and leases, and by using Scruggs's credit card.

Oakes thereafter proceeded to Rockwell's apartment. When he arrived, Rockwell initially fled, but returned, saying later he thought Oakes was there to arrest him. When Rockwell found out what Oakes wanted, he fled in earnest and remains at large.

Oakes obtained entry to Rockwell's apartment with the permission of the landlord, who complained that Rockwell had fled without paying rent. Oakes, who did not have a search warrant, discovered some of the property that Scruggs had listed as stolen and photographed the articles.

Meanwhile, Scruggs was pursuing his insurance claim against his carrier. At the outset, the insurance company advanced him a check for $3,000, promising to pay the full amount later.

The policy, however, contained an exclusionary clause, which prevented recovery if a burglary was committed by a partner, joint venturer, officer, director, employee or agent of the company. Believing that Rockwell had committed the crime, the insurance company refused to pay Scruggs's claim under this exclusionary clause.

## II.

Scruggs sued in state court, and the insurer removed. The parties stipulated that the sole issue for trial was whether Rockwell had committed the burglary. If he did, and was found to be a person acting within the exclusionary clause's limits, Scruggs conceded the policy would not apply. Likewise, the insurer conceded that if Rockwell did not commit the crime, or was not found to be a person acting within the scope of the exclusionary clause, the insurer was liable.

Thus defined, the case proceeded to a jury trial, at which Oakes testified that he believed Rockwell had committed the crime. There was evidence of Rockwell's schemes to defraud, specifically, his prior fraud charge and his non-burglary-related fraud on Scruggs.

Scruggs moved to exclude the insurer's introduction of Oakes's photographs taken at Rockwell's apartment, on the ground that Oakes had obtained them without a warrant. Scruggs then moved to impeach Oakes's testimony, claiming that Oakes was unable to obtain fingerprints, or other genetic evidence; and that the police had failed to arrest Rockwell for the crime. Instead, Scruggs maintained a theory that the broken window (and some removed bars that covered it) proved that this crime was the result of an outside job.

Jurors were asked (1) whether Rockwell committed the burglary and (2) if so, whether Rockwell was a person acting within the scope of the insurance policy. The jury returned affirmative

4

answers on both questions, and the court entered judgment for the insurer.

Scruggs appeals only the evidentiary sufficiency of the finding on the first interrogatory. In doing so, he also makes evidentiary challenges.

## III.

Scruggs claims that the district court erred in admitting Oakes's photographs taken in Rockwell's apartment. Scruggs claims that the photos were obtained in violation of the Fourth Amendment and should therefore be excluded. He also appears to challenge this evidence's reliability.

## A.

Even assuming Scruggs's invocation of the exclusionary rule in this civil proceeding were not otherwise problematic, he has no standing to assert this Fourth Amendment violation under the well-settled law of this circuit, because he lacks "(1) . . . an actual, subjective expectation of privacy with respect to the place being searched or items being seized, and (2) whether that expectation of privacy is one which society would recognize as reasonable." *United States v. Lee*, 898 F.2d 1034, 1037-38 (5th Cir. 1990).

## B.

Scruggs claims the district court should have excluded this evidence because it was "unreliable." He maintains that Oakes never matched the serial numbers of the equipment in the photographs with those listed as stolen, and therefore, cannot be sure that those were the stolen goods.

This objection goes more to sufficiency of the evidence than to admissibility. The point Scruggs raises, therefore, was for the jury to weigh and evaluate in reaching its decision on how much to credit the evidence.

Even if we were to consider this objection as a general FED. R. EVID. 403 challenge that the prejudicial effect of the evidence outweighed its probative value, however, Scruggs would fare no better. We review rule 403 challenges for abuse of discretion. *See Kelly v. Boeing Petroleum Servs., Inc.*, 61 F.3d 350, 360 (5th Cir. 1995). We find no such abuse of discretion here.

IV.

Scruggs challenges, for the first time on appeal, the introduction of Rockwell's other bad acts to show that Rockwell, more likely than not, committed this robbery of Scruggs's office. Scruggs claims the court should have excluded this evidence under FED. R. EVID. 404(b): that the insurer should not have been allowed to introduce evidence of Rockwell's bad character to prove that he acted in conformity therewith.

6

Even assuming that this claim were properly before us (an assumption that does not affect the outcome of our analysis), the court did not abuse its discretion in admitting the evidence under rule 404(b).  Evidence of Rockwell's past defrauding actions were relevant in showing a pattern, or plan, to defraud Scruggs, so the district court was well within its discretion in deciding to admit them.  *See FDIC v. Fidelity & Deposit Co.*, 45 F.3d 969, 979 (5th Cir. 1995).

V.

"In determining the sufficiency of the evidence, we apply well-settled standards of appellate review.  If the state of the proof is such that reasonable and impartial minds could reach the conclusion expressed in the jury's verdict, we must not disturb the jury's findings on appeal." *Carlton v. Shelton*, 722 F.2d 203, 205 (5th Cir. 1984).

The evidence supports the jury's finding.  Although jurors could have believed Scruggs's theory, that is, that someone else had broken in from the outside, there was ample evidence that Rockwell was one of the culprits.  Rockwell had otherwise defrauded Scruggs; he had fled; and he had what appeared to be some of the stolen merchandise in his apartment.  We are unable to say that no reasonable juror could have drawn the conclusion of this jury on

7

the first interrogatory.

AFFIRMED.